# Use of the National Guard to Support Drug Interdiction Efforts in the District of Columbia

Use of the District of Columbia National Guard, in its militia status, to support local drug law enforcement efforts is not prohibited by the Posse Comitatus Act.

The activity may receive funding from the Secretary of Defense under section 1105 of the Defense Authorization Act if the President, as Commander-in-Chief of the District of Columbia National Guard, requests such financial assistance.

Executive Order 11485 assigns the Attorney General the responsibility of establishing, in consultation with the Secretary of Defense, the law enforcement policies to be observed by the National Guard in these circumstances, but it does not assign the Attorney General any responsibility with respect to the policy decision of whether the National Guard should be assigned to the described use or any supervision and control responsibility for the implementation of such a decision

April 4, 1989

MEMORANDUM OPINION FOR THE ACTING ASSOCIATE ATTORNEY GENERAL

This memorandum responds to the request of your Office[1] for our opinion with respect to the use of the District of Columbia National Guard ("National Guard"), in its militia status (*i.e.*, not in federal service), to support the drug law enforcement efforts of the District of Columbia Metropolitan Police.[2] You have raised the following specific questions: (1) Is this use of the National Guard prohibited under the Posse Comitatus Act? (2) May the Secretary of Defense provide funds to support the use, pursuant to section 1105 of the National Defense Authorization Act, Fiscal Year 1989 ("Defense Authorization Act")? (3)

---

[1] Memorandum to Douglas W. Kmiec, Assistant Attorney General, Office of Legal Counsel, from Margaret C Love, Deputy Associate Attorney General, *Re  Use of the National Guard to Support Drug Interdiction Efforts in the District of Columbia* (Mar 21, 1989), as supplemented by Memorandum to Douglas W Kmiec, Assistant Attorney General, Office of Legal Counsel, from Margaret C. Love, Deputy Associate Attorney General, *Re· Use of the National Guard to Support Drug Interdiction Efforts in the District of Columbia* (Mar. 23, 1989)

[2] We have been informed by the Department of Defense that "[t]he D C. National Guard, like the State and Territorial National Guards, may normally be called into federal service for civil law enforcement purposes only pursuant to 10 U S C. §§ 3500, 8500, 331, 332 or 333. The D.C. National Guard plan, currently under review by the Department of Justice, does not propose to call the D C. National Guard into federal service " Letter to John O McGinnis, Deputy Assistant Attorney General, Office of Legal Counsel, from Robert L Gilliat, Assistant General Counsel (Personnel & Health Policy), Department of Defense (Mar 31, 1989).

What are the Attorney General's responsibilities in these circumstances under section 2 of Executive Order 11485?

As discussed below, we have concluded that the described use of the District of Columbia National Guard is not prohibited by the Posse Comitatus Act because that Act does not apply to a National Guard acting as a militia and because, even if that Act did so apply, the use has been authorized by an Act of Congress. Congress has authorized the use in sections 39-104 and 39-602 of the D.C. Code. The activity may receive funding from the Secretary of Defense under section 1105 of the Defense Authorization Act if the President, as Commander-in-Chief of the District of Columbia National Guard, requests such financial assistance.[3] Finally, Executive Order 11485 assigns the Attorney General the responsibility of establishing, in consultation with the Secretary of Defense, the law enforcement policies to be observed by the National Guard in these circumstances, but it does not assign the Attorney General any responsibility with respect to the policy decision of whether the National Guard should be assigned to the described use or any supervision and control responsibility for the implementation of such a decision.

## Discussion

### 1. Posse Comitatus Act

Application of the Posse Comitatus Act to a National Guard depends on whether that National Guard is acting in its status as militia for the particular State or territory or the District of Columbia, or rather has been called into federal service by the President. Under the Posse Comitatus Act, the use of the Army or the Air Force to execute the laws is prohibited "except in cases and under circumstances expressly authorized by the Constitution or Act of Congress." 18 U.S.C. § 1385. Since by its terms the Posse Comitatus Act applies only to the use of the Army or the Air Force, it applies to a National Guard only when it has been put into federal service as part of the Army or Air Force.[4] Since the described use for the District of Columbia National Guard would be for it in its militia rather than federal service capacity, it is not prohibited by the Posse Comitatus Act.

---

[3] For purposes of this provision authorizing financial assistance to National Guards in their militia capacity upon the request of State Governors, the President stands in the position of a Governor

[4] This Department has long recognized that the Posse Comitatus Act does not apply to a National Guard in its militia status. *See, e g.,* Letter for Charles J Zwick, Director, Bureau of the Budget, from Warren Christopher, Deputy Attorney General at 2 (June 4, 1968) (stating, in the context of supporting use of the District of Columbia National Guard in militia status rather than federal status to control civil disturbances, that "the Posse Comitatus Act ... prohibits placing *federalized* Guardsmen at the disposal of civilian law-enforcement officers to assist the latter in executing the laws") (emphasis added). That the Posse Comitatus Act is limited in this way is also recognized in Congress *See, e.g.,* National Defense Authorization Act Conference Report, H.R. Conf. Rep. No. 753, 100th Cong., 2d Sess 453 (1988) ("When not in federal service, the National Guard is not subject to the Posse Comitatus Act.").

Moreover, even if the Posse Comitatus Act applied to the described use, it would not prohibit the use because it is authorized by an Act of Congress: Act of March 1, 1889, ch. 328, 25 Stat. 772, which enacted the D.C. Code. Section 39-602 of the D.C. Code authorizes the Commanding General of the National Guard to "order out any portion of the National Guard for such drills, inspections, parades, escort, or other duties, as he may deem proper." The authorization to order out the Guard for "other duties, as he may deem proper" has long been viewed as broad enough to include law enforcement activities.[5] In 1963, for example, this Office interpreted section 39-602 to authorize

> the President to request or urge the commanding general to use the National Guard in support of activities of the District of Columbia police whenever he feels that the welfare, safety, or interest of the public would be served thereby.

Schlei Opinion, at 3. This natural reading of section 39-602 is especially appropriate in light of section 39-104 of the Code, which makes it clear that the National Guard, acting as militia, may be "called ... to aid the civil authorities in the execution of the laws." Relying on section 39-602, the National Guard has been used in its militia capacity to support law enforcement activities of the District of Columbia Metropolitan Police, both in the course of presidential inaugurations and in the case of large demonstrations. *See, e.g.*, Letter for Michael P.W. Stone, Under Secretary of the Army, from Harold G. Christensen, Deputy Attorney General (Jan. 13, 1989) (1989 inauguration), and letters cited therein (prior inaugurations); Memorandum for the Deputy Attorney General, from Mary C. Lawton, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Law Relating to Civil Disturbances* at 5-6 (Jan. 6, 1975) ("Lawton Opinion") (demonstrations).[6]

---

[5] *See, e g*, Memorandum for the Assistant Attorney General, Civil Division, from Norbert A. Schlei, Assistant Attorney General, Office of Legal Counsel, *Re· Authority to use the National Guard of the District of Columbia to supplement civilian police force activities during a massive demonstration or parade in the District of Columbia* at 2 (July 30, 1963) ("Schlei Opinion") (section 39-602's "language is broad enough to be construed as authorizing the commanding general to use the National Guard to support activities of the civilian police force during any massive demonstration or parade in the District"), Memorandum for the Assistant Attorney General, Civil Division, from Norbert A. Schlei, Assistant Attorney General, Office of Legal Counsel, *Re· Memorandum concerning the amenability of members of the National Guard of the District of Columbia to courts-martial or other disciplinary action for failure to participate in formations ordered pursuant to Section 44 of the Act of March 1, 1889* at 2 (Aug. 9, 1963) ("[T]he term 'other duties' can be reasonably interpreted as including activities in aid of civil authorities ")

[6] Although there is adequate statutory authority in this case, and we therefore need not reach the question, since the President is Commander-in-Chief of the District of Columbia National Guard in its militia status (D.C. Code § 39-109), and since the D.C. Code is federal law, this use of the National Guard might also be supported on the basis of the President's inherent constitutional authority to use any forces at his command to carry out the laws. *See In Re Neagle*, 135 U.S 1 (1890).

## 2. Funding Authority under the Defense Authorization Act

Section 1105(a)(1) of the Defense Authorization Act authorizes

> the Secretary of Defense to provide to the Governor of a State who submits a plan to the Secretary under paragraph (2) sufficient funds for the pay, allowances, clothing, subsistence, gratuities, travel, and related expenses of personnel of the National Guard of such State used — (A) for the purpose of drug interdiction and enforcement operations; and (B) for the operation and maintenance of the equipment and facilities of the National Guard of such State used for such purposes.

Pub. L. No. 100-456, 102 Stat. 2047 (1988). Since the described use of the District of Columbia National Guard is for drug law enforcement purposes, the Defense Authorization Act would thus clearly authorize federal funding for the use if that National Guard is eligible for the funding to the same extent as are State National Guards. For the reasons set forth below, we believe that it is.

"The President of the United States shall be the Commander-in-Chief of the militia of the District of Columbia." D.C. Code § 39-109. This Office has consistently taken the position that "the President ... stands in a relation to the D.C. National Guard that is similar to the relation obtaining between the Governors of the several States and their respective State National Guard units."[7] Thus, we believe it is reasonable to interpret section 1105 of the Defense Authorization Act to authorize the President to request financial support for the District of Columbia National Guard to the same extent as Governors may request such support for their State National Guards.

Not only may section 1105 be interpreted to equate the President with a Governor, it may also be interpreted to equate the District of Columbia with a State for purposes of this statute. "This Office has consistently taken the position that the District is a State within the meaning of chapter 15 of Title 10 [which authorizes federalizing the National Guards or using the armed forces to aid State governments or enforce federal authority], even though not so defined ...." Lawton Opinion, at 5. The rationale for thus treating the District of Columbia as a State in the National Guard context was explained with reference to the President

---

[7] Memorandum for Warren Christopher, Deputy Attorney General, from Martin F. Richman, First Assistant, Office of Legal Counsel, *Re. Use of D C. National Guardsmen to Aid in Policing Anti-War Demonstrations in the District of Columbia and at the Pentagon* at 2 (Oct 13, 1967) ("Richman Opinion"). *See also* Schlei Opinion, at 3 ("[T]he President performs the same function with respect to the District of Columbia National Guard as the Governors of the several States serve with respect to their respective State organizations.").

calling the National Guard for the District into federal service under 10 U.S.C. § 332. Relying on *Geofroy v. Riggs*, 133 U.S. 258 (1890), the Office reasoned as follows:

> The District of Columbia is not considered as being a "State" in the Constitutional sense.[8] However, the District has been held to be a State for purposes of a treaty which accorded to certain aliens the right to hold property in all "States" of the Union. The Supreme Court adopted this construction [in *Geofroy*] because of the unreasonable result that would have followed if a distinction had been drawn between the District and the States for purposes of the treaty. Similarly, if an Act of Congress generally applies in every "State" without reference to the Constitutional limitations of this term, and if a reasonable construction requires that the District be considered as on the same footing with all the States for purposes of the Act, the Court's opinion in the *Geofroy* case indicates that the District would be held to be a "State" for those purposes.

> The evident purpose of 10 U.S.C. 332 is to enable the President to use Federal troops, if necessary, "to enforce the laws of the United States" in any part of the country where their execution is obstructed. By any reasonable interpretation of this provision, its protective reach must be regarded as extending to the District of Columbia, where *all* the laws are laws of the United States. It is therefore concluded that the reference in section 332 to disturbances "in any State" would include disturbances in the District of Columbia.

Richman Opinion, at 3-5 (citations and footnotes omitted). This reasoning supporting the conclusion that the District of Columbia should be viewed as a "State" for purposes of the statute authorizing the domestic use of the armed forces also supports the conclusion that the District be viewed as a State for purposes of section 1105 of the Defense Authorization Act.

In the terms of the Richman Opinion, "a reasonable construction [of section 1105] requires that the District be considered as on the same footing with all the States for purposes of the [section]." *Id.* at 4.[9] It is rea-

---

[8] Nor, absent constitutional amendment, could it be. Letter for James C Miller, III, Director, Office of Management and Budget, from John R Bolton, Assistant Attorney General, Office of Legislative Affairs, at 2-4 (Apr. 8, 1987).

[9] Even in the absence of the Richman Opinion, we would be inclined to conclude that the District of Columbia should be treated as a State for purposes of section 1105 The rule of construction in *Geofroy*

Continued

sonable to read section 1105 to be authorizing assistance to all National Guards in their militia status, including the National Guard for the District of Columbia. As is evident from its title, the general purpose of the section was an "enhanced drug interdiction and enforcement role for the National Guard." 102 Stat. 2047. Nothing in the section or its legislative history indicates that the National Guard of the District of Columbia was intended to be excluded. Indeed, the conferees who agreed to this section stated their "intent ... that priority be given to those plans which (a) involve areas of the greatest need in terms of drug interdiction and (b) are most likely to be effective." H.R. Conf. Rep. No. 753, 100th Cong., 2d Sess. 453 (1988). The decision to use the National Guard in the District of Columbia would certainly appear to represent a determination that the District is such a high priority area.

Accordingly, we conclude that, as Commander-in-Chief of the National Guard for the District of Columbia in its militia status, the President stands in the position of a Governor of a State and, pursuant to section 1105 of the Defense Authorization Act, may request funding by the Secretary of Defense by submitting a plan for the use of the National Guard to assist the drug law enforcement activities of the District of Columbia Metropolitan Police.[10]

## 3. Attorney General Responsibility under Executive Order 11485

Section 2 of Executive Order 11485 ("Supervision and Control of the National Guard of the District of Columbia"), October 1, 1969, 3 C.F.R. 814, (1966-1970), provides that

> The Attorney General is responsible for: (1) advising the President with respect to the alternatives available pursuant to law for the use of the National Guard to aid the civil authorities of the District of Columbia; and (2) for establishing after consultation with the Secretary of Defense law enforcement policies to be observed by the military forces in the event the National Guard is used in its militia status to aid civil authorities of the District of Columbia.

While it is evident that clause (1) of section 2 does no more than reiterate in this specific context the Attorney General's established authority as

---

⁹ ( . continued)
is a venerable one and Congress may be presumed to have notice of it. Accordingly, in light of the fact that there is no evident congressional intent to exclude the District from the ambit of section 1105, we believe Congress must have understood that the District would be included within that section

¹⁰ We understand that the Mayor of the District of Columbia has submitted such a plan. However, since under our interpretation of section 1105 it is the President who must request financial assistance and submit a plan, the President's plan may, but need not, be based on the plan submitted by the Mayor.

legal advisor to the President, you have asked for our interpretation of the authority being given the Attorney General under clause (2).

By its express terms the Executive Order provides that it is the Attorney General who has the responsibility for establishing the law enforcement policies that the National Guard must abide by when it is used in its militia capacity to aid the civil authorities of the District of Columbia. The Attorney General must consult with the Secretary of Defense concerning what those policies should be, but it is clearly the Attorney General who is to determine the policies. Thus, while the Order does not assign any responsibility to the Attorney General with respect to deciding the policy question of whether the National Guard is to be used to assist the District's civil authorities, once that decision has been made, the Attorney General has the authority to establish the governing law enforcement policies. Moreover, while we believe it is reasonable to infer from the Order that the Attorney General has authority to monitor the use of the National Guard in these circumstances in order to determine whether the law enforcement policies are in fact being observed, section 1 of the Order makes it clear that the actual supervision and control of the National Guard in these circumstances is the responsibility of the Secretary of Defense.

## Conclusion

The described use of the National Guard is not prohibited by the Posse Comitatus Act because that Act does not apply to a National Guard acting as a militia and because, even if that Act did so apply, such a use has been authorized by sections 39-104 and 39-602 of the D.C. Code. The activity may receive funding from the Secretary of Defense under section 1105 of the Defense Authorization Act if the President, as Commander-in-Chief of the National Guard, requests such financial assistance. Finally, Executive Order 11485 assigns the Attorney General the responsibility of establishing, in consultation with the Secretary of Defense, the law enforcement policies to be observed by the National Guard in these circumstances, but it does not assign the Attorney General any responsibility with respect to the policy decision of whether the National Guard should be assigned to the described use or any supervision and control responsibility for the implementation of such a decision.

DOUGLAS W. KMIEC
*Assistant Attorney General*
*Office of Legal Counsel*